[Civ. No. 69767. Second Dist., Div. Four. Jan. 13, 1984.]

JEAN RAINS et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
CENTER FOR FEELING THERAPY PSYCHOLOGICAL
CORPORATION et al., Real Parties in Interest.

934

COUNSEL

Stephen L. Cooper and Paul Morantz for Petitioners.

No appearance for Respondent.

Fonda & Garrard, Stanley D. Saltzman, Dori E. Miles, Vletas & Greer, Barash & Hill, Edwin B. Warren, John G. Kerr, Louis M. Marlin, Roper & Folino and Michael J. Irwin for Real Parties in Interest.

OPINION

**WOODS, P. J.**—This petition seeks review of an order sustaining a demurrer to a cause of action for battery without leave to amend. The alleged batteries occurred as an aspect of an in-patient psychiatric treatment program in which plaintiffs participated and consented to defendants using physical violence upon them as a therapeutic measure.

The two issues presented by this appeal are:

I

Whether a cause of action for battery was well pleaded in plaintiffs' second amended complaint and, if not, whether it is possible to plead such a cause under applicable law.

II

Whether respondent's imposition of monetary sanctions under Code of Civil Procedure section 128.5, subdivision (a), was an abuse of discretion.

Whether a viable cause for battery has been or might be pleaded turns upon whether plaintiffs' consent to use of physical violence by defendants as a therapeutic treatment may be vitiated by allegations that defendant psychiatrists actually did not administer such violence for any therapeutic purposes but for the improper ulterior purpose of subjugating plaintiffs and controlling their behavior to defendants' personal advantage.

The facts are that petitioners (hereinafter plaintiffs) sued real parties (hereinafter defendants), psychiatrists and the corporations established by them as alter egos, by a second amended complaint alleging counts for fraud, breach of contract, false imprisonment, battery, intentional infliction of distress, medical malpractice, and negligence. Plaintiffs allege, in substance, that defendants induced plaintiffs to enter into a residential group psychiatric treatment program upon certain false representations as to the therapeutic value and limited term of the program. In fact, defendants used the program as a pretext to employ psychological coercion, humiliation, and physical violence to subjugate plaintiffs, to coerce plaintiffs to remain in the residential program, to serve defendants for no compensation, to give defendants donations, to recruit new patients, and to believe their well-being depended upon remaining in the program and loyally serving defendants to the exclusion of the outside world.

The fifth count of the second amended complaint alleges that defendants committed numerous batteries upon plaintiffs in the administration of the psychiatric program. The allegations admit that plaintiffs consented to the use of physical violence upon their person by defendants, and by other patients under direction of defendants, as an aspect of the psychiatric treatment (sometimes referred to as "sluggo therapy") because "[d]efendants, . . . , coercively persuaded plaintiffs that such physical abuse was necessary to plaintiffs' becoming 'cured'."

The count alleges that "any consent to such touchings occurred as a result of the fraudulent representations described in Paragraphs 8 and 14 of the First Cause of Action." However, the battery count expressly incorporates by reference only paragraphs 1 through 13 of the first cause of action.

The specific misrepresentations described in paragraph 8 of the first cause of action (fraud) are that, at or about the time the respective plaintiffs enrolled in defendants' program, defendants represented to them orally and in writing that a patient would be cured and transformed into a successful person within a period of six months to one year.

Paragraph 14 of the first cause of action alleges that as a result of the fraudulent representations and concealment of material facts alleged in paragraphs 12 and 13 of that cause, plaintiffs entered into defendants' program and were "forceably persuaded into becoming loyal and dedicated followers of defendants, and did believe that personal survival depended on remaining in defendants organizations and treatment, and did believe they should not return to the outside world."

The battery count further alleges that "[a]ssaults and batteries were also used to control the behavior of plaintiffs under the guise of being 'proper therapy'." Plaintiffs seek punitive damages for the alleged batteries.

Defendants demurred to the complaint on the ground that plaintiffs' admission of their consent to the use of violence upon them, bars a cause of action for battery because consent to offensive touching is vitiated only where the touching is different in nature from that to which consent was given. Defendants argued that under the rule stated in *Cobbs* v. *Grant* (1972) 8 Cal.3d 229, 239-241 [104 Cal.Rptr. 505, 502 P.2d 1], a physician may not be liable for battery upon a patient unless he performs a treatment which is "substantially different" from that to which the patient gave consent. Defendants concluded that because the alleged violent touchings of which plaintiffs now complain are physically identical to the contact consented to, plaintiffs' consent is not vitiated and there can be no cause for battery. Defendants also challenged as unsupported by authority or logic the plaintiffs' theory that their consent is vitiated because it resulted from the "coercive persuasion" employed during the course of the program.[1]

Respondent sustained the demurrer without leave to amend. The basis of this ruling was not enunciated.

---

[1]In their petition for mandate, plaintiffs have abandoned this theory. Their two present principal contentions are that the trial court abused its discretion by rejecting the theory that intentional misrepresentation as to therapeutic purpose vitiates consent and by imposing monetary sanctions.

Plaintiffs filed a motion for a "new trial," and another motion for reconsideration and for leave to file a proposed third amended complaint which contained a battery count alleging additional facts. Respondent denied the motion for new trial and the motion for reconsideration, but allowed the filing of the third amended complaint upon striking the battery count therefrom. Respondent imposed monetary sanctions against plaintiffs and their counsel, jointly, in the amount of $1,000 pursuant to Code of Civil Procedure section 128.5, subdivision (a), for bringing a motion for reconsideration without alleging new and different state of facts as required by Code of Civil Procedure section 1008, and for bringing a wholly inappropriate motion for new trial.

The stricken cause of action for battery in the third amended complaint contained the new fact allegations that "[i]n particular, no information was given to any plaintiff that the real purpose of the assaults and batteries was to punish plaintiffs, put fear into the plaintiffs, make plaintiffs obedient, and subservient to the defendants." It also alleged that "[s]aid batteries and assaults were not for therapeutic purposes, but were made to control the plaintiffs contrary to any representations made to plaintiffs when they first entered defendants' program."

I

We have concluded that plaintiffs can state a cognizable cause of action for battery. ■ A battery is a violation of an individual's interest in freedom from intentional unlawful, harmful or offensive unconsented contacts with his or her person. (See Prosser, Torts (4th ed. 1971) § 9, pp. 34-37.) The element of lack of consent to the particular contact is an essential element of battery. (See Prosser, Torts, *supra,* at § 18, p. 101.)

■ For purposes of the present proceeding, the critical question is whether plaintiffs allege or could allege facts sufficient to show that there was an absence of informed consent by plaintiffs to the particular offensive nature of the contact alleged. That is, if the consent manifested by plaintiffs' participation in defendants' program after advisement that violent therapeutic contact would occur may not be vitiated under applicable law by the alleged misrepresentation as to therapeutic purpose, then plaintiffs not only have not stated a *prima facie* cause in battery but may not, as a matter of law, plead such a cause.

The Restatement Second of Torts section 55, comment b, entitled *"Fraud or Mistake as to Relation of Actor to Other,"* states the rule that fraud as to the identity of the person making contact or the true relation between the parties may vitiate consent because the offensive nature of the contact is

altered according to the identity or capacity of the actor in relation to the person subjected to contact; e.g., contact by a physician for diagnostic or therapeutic purposes is unobjectionable to the patient, but identical contact by a person falsely professing to be a physician would be objectionable. Section 55 goes on to state a variation of the rule applicable to this case, as follows:

"So too, the fact that a particular contact is necessary may deprive it of its offensive quality. There are many contacts to which no reasonable person would hesitate to submit when they are necessary for some proper purpose, such as the cure of a disease, which, but for such a necessity, would be highly offensive to any person of ordinary modesty. Thus, if a physician indulges in familiarities which are unnecessary to the treatment of his patient, assent to them in the mistaken belief that they are a necessary part of the treatment is not effective as consent." (At pp. 89-90.)

Illustration number 4 to comment b is equally apposite: "A, a physician, induces B unnecessarily to expose her person by telling her that it is necessary for a thorough diagnosis and assists her in taking off her clothing. A is subject to liability to B." (At p. 90.)

The same rule is stated in Prosser on Torts (4th ed. 1971) section 18, "Mistake, Fraud and Duress," page 105: "[A] physician may be liable for inducing an innocent girl to submit to indecent liberties, when he knows that she is ignorant of the fact that they are unnecessary for medical treatment. [Citations.] Apparently, however, the mistake must extend to the essential character of the act itself, which is to say that which makes it harmful or offensive, [citation to Restatement Second of Torts, §§ 55, 57] rather than to some collateral matter which merely operates as an inducement. Thus consent to intercourse is still consent, although it is in return for counterfeit money, and the woman has no [cause of] action for battery when she subsequently decides that she has been raped. [Citation.]"

An analogous vitiation of consent is recognized in Fleming on Torts (4th ed. 1971) section 78, "Defences to Intentional Torts; Consent; Reality of Consent," page 78. There it is stated: "Some misapprehensions also vitiate consent. Deceit as to the real nature of the defendant's conduct clearly does, as when it was held to be rape for a choir-master to seduce a young pupil, ignorant of the facts of life, under the pretense that this would improve her voice. [Citation.] On the other hand, a deceit relating to a wholly collateral matter which operates merely as an inducement, does not destroy the reality of consent. E.g., a woman who lives with her paramour under a false promise that he would marry her, cannot maintain that every act of intercourse is an assault; . . ."

It appears that no reported California case has addressed the question under consideration.[2] However, the out-of-state cases cited in Prosser on Torts (*op. cit. supra,* at p. 105, fn. 75) and the authorities cited in Fleming on Torts (*op. cit. supra,* at p. 78, fns. 28 and 31) support the correctness of the determination that a physician's intentional misrepresentation that an otherwise offensive touching is medically necessary vitiates the consent given in ignorance of the true nontherapeutic character of the touching.

Defendants correctly point out that none of the cases cited in Prosser on Torts, *supra,* at page 105, footnote 75, and Fleming on Torts, *supra,* at page 78, footnote 28, involve a licensed physician who obtains personal advantage by falsely representing that otherwise offensive contact is medically necessary. However, these cases are significant for their analyses of analogous fact situations. One of these cases, *Bartell* v. *State* (1900) 106 Wis. 342 [82 N.W. 142], holds that consent so obtained by an unlicensed massage healer is vitiated by the fact of his misrepresentation of therapeutic necessity rather than by the fact he was not a licensed physician. The analysis of this case, as well as that of the remaining cases which find vitiation of consent due to the misrepresentation of the tortfeasor's professional capacity or purpose, supports the conclusion that deceit as to the therapeutic purpose of contact vitiates consent for the same reason as does deceit as to the lack of professional capacity of the person effecting the purported therapeutic contact.

*Bartell* v. *State, supra,* 82 N.W. 142, involved a battery defendant who "claimed to be a magnetic healer," not a licensed physician. He practiced his profession by massage treatments, which method was familiar to licensed physicians of that time. In so treating an 18-year-old female, with her permission and that of her father, defendant required her to remove all her clothing as a necessity of the treatment while alone in a room with him. He then massaged her body while it was wholly exposed to his view. Finally, he had her sit on his lap and "took some indecent liberties with her." Defendant's conviction of battery was affirmed by the Wisconsin Supreme Court which held the determinative question to be whether, in the manner defendant proceeded to treat his patient, the defendant attempted in good faith to cure the patient's disorder and caused her to expose her body for purpose of such treatment or instead caused the patient to "needlessly . . . submit her body to him for [his personal] gratification" by intentionally misrepresenting to her that such submission was "a necessary incident of

---

[2]The case of *Inderbitzen* v. *Lane Hospital* (1932) 124 Cal.App. 462, 468-469 [12 P.2d 744], is not the authority plaintiffs claim. That case held only that numerous successive rough and rude vaginal examinations of a woman by twelve different physicians who did not sterilize their hands was medically unnecessary and an assault and trespass upon her person at least after she had objected to such touchings. (At p. 468.)

the treatment for curative purposes." (At p. 143.) *Bartell* held on the basis of expert testimony that total disrobement was not necessary to therapy, and that a battery had occurred.

No persuasive reason is advanced by defendants, nor is any apparent to this court, why physicians, to the exclusion of all other persons, should enjoy total immunity from liability where they intentionally deceive another into submitting to otherwise offensive touching to achieve a nontherapeutic purpose known only to the physician. If a physician, for the sole secret purpose of generating a fee, intentionally misrepresented to a patient that an unneeded operation was necessary, it is beyond question that the consent so obtained would be legally ineffective.

This court is persuaded by the authorities discussed herein that the therapeutic versus nontherapeutic purpose of touching by a psychiatrist goes to the "essential character of the act itself" and thus vitiates consent obtained by fraud as to that character.

This conclusion does not unfairly subject physicians to liability for battery, as is suggested by defendants. For purposes of present review, the sole question is whether the plaintiffs can possibly allege facts stating a cause for battery against their psychiatrists. To prevail on such a theory plaintiffs must prove at trial that defendants' true purpose in employing violent physical contact upon plaintiffs was to achieve the secret personal purposes alleged rather than the announced purpose of curing the mental disorders of the plaintiffs.

Neither is the conclusion reached here inconsistent with the holding of or the policy considerations discussed in *Cobbs* v. *Grant, supra,* 8 Cal.3d 229. In *Cobbs,* a surgeon performed the precise surgery to which the patient consented, but failed to advise him of certain "low-probability" complications which unfortunately did develop. It was held that in such a situation, the physician's omission to advise of all known potential complications is actionable only in negligence because there is no intentional deviation from the consent given. But "[w]hen the patient gives permission to perform one type of treatment and the doctor performs another, the requisite element of deliberate intent to deviate from the consent given is present." (At p. 240.)

The emphasis in *Cobbs* upon the "intentional deviation from the consent given" is wholly consistent with the analysis in the present case. *Cobbs* did not involve a situation where the physician was found to have intentionally performed treatment for a nontherapeutic purpose that served his personal advantage to the injury of the patient. There was no intent to cause injury to the patient. The *Cobbs* situation is qualitatively distinct from that where

a physician intends to perform treatment for a nontherapeutic purpose when consent was given only for a therapeutic purpose. The latter case constitutes an intentional deviation from the consent given and is even more objection able than a physician's good faith effort to effect a cure by exceeding the precise treatment to which consent was given.

*Cobbs* v. *Grant, supra,* 8 Cal.3d 229, found certain policy considerations to require protection of physicians in the context of an omission to advise of all known potential complications of a particular treatment. The first is the lesser burden of proof required in a battery count as contrasted with a medical malpractice count where the physician's omission must be proven not to conform to prevailing medical standards of full disclosure. Second, a physician found liable for battery for failure to give full disclosure of potential complications would be subject to punitive damages which his or her malpractice insurance might not cover. (At p. 240.) However, neither of these considerations has application in the context of an intentional deception as to the essential therapeutic nature of a treatment. Instead of enjoying a lesser burden of proof as to negligent omission, such a patient must prove intentional deceit as to the represented therapeutic purpose. Logically, this entails a showing of the known absence of therapeutic value and wrongful intent. If wrongful intent exists, the rationale of limiting liability to conform to negligent omission is inapplicable.

II

Petitioners contend that respondent's imposition of monetary sanctions against them was an abuse of discretion because ". . . petitioners' counsel, themselves, sought advise [*sic*] from an Appellate lawyer for suggestions on what procedures to take following the Court sustaining the demurrer without leave to amend. The filing of the Motion to Reconsider resulted from petitioners [*sic*] counsels' own obtaining of legal advise [*sic*] from an Appellate lawyer." The petition also argues that the motion for reconsideration was supported by "additional . . . new and different" facts stated in the proposed third amended complaint and that the seeking of reconsideration on the basis of such new fact allegations was intended to expedite respondent's workload by giving respondent the option to either allow the third amended complaint in its entirety (including a valid cause for battery) or allowing the complaint after striking the battery count.

Section 128.5, subdivision (a) of the Code of Civil Procedure authorizes a trial court to order a party or the party's attorney, or both, to pay reasonable expenses, including attorneys' fees incurred by opposing parties "as a result of tactics or actions not based on good faith which are frivolous or which cause unnecessary delay. Frivolous actions or delaying tactics in-

clude, but are not limited to, making or opposing motions without good faith."

Apparently no reported California case has determined whether a motion for reconsideration of the sustaining of a demurrer without leave to amend may be based upon an alleged different state of facts set forth in a proposed new complaint.

Code of Civil Procedure section 1003 provides, in part, "An application for an order is a motion." A demurrer is, for other purposes, one of the allowable pleadings (Code Civ. Proc., § 422.10) and is one of the means of objecting to a complaint or cross-complaint (Code Civ. Proc., § 430.10). We hold that for purposes of Code of Civil Procedure section 1008, subdivision (a), a demurrer is also "an application for an order" and will support an application to reconsider the matter when supported by a proposed pleading containing new allegations not previously included by the pleader.

Here, the affidavit submitted by petitioners' counsel in support of the motion for reconsideration contained hearsay allegations as to various instances of nontherapeutic violence, which affidavit was appropriately objected to by defendants. Only the new allegations in the battery count of the proposed third amended complaint could possibly satisfy the requirement of section 1008. In their opposition to the motion for reconsideration, defendants argued the requisite showing must consist of new facts previously unknown to the moving party. But no authority is cited for this proposition.

It appears that only two reported cases have construed the "different state of facts" requirement of subdivision (a) of section 1008 and the "new facts" requirement of subdivision (b) of that statute. Both cases suggest a construction conflicting with defendants' present contention that plaintiffs' motion for reconsideration was improper, absent a showing of newly discovered facts.

In *Graham* v. *Hansen* (1982) 128 Cal.App.3d 965, 970-971 [180 Cal.Rptr. 604], the distinction was noted between motions for reconsideration (authorized by subd. (a) of § 1008) and renewals of motions seeking the same order, (authorized by subd. (b) of § 1008). Subdivision (a) permits motions for reconsideration of an interim ruling by the original moving or opposing party provided that the motion is based upon an alleged "different state of facts" than the original motion. Subdivision (a) does not require such facts to be new or newly discovered. In contrast, subdivision (b) continues in effect, virtually unchanged, former section 1008. It allows renewed applications for the same order only by the unsuccessful original moving

party upon alleged "different facts" which are "new." Subdivision (b) imposes no time limit on the filing of such motions. Subdivision (a), in contrast, allows either the unsuccessful moving or opposing party to seek reconsideration within ten days of notice of the original unfavorable order. Thus, two separate and distinct procedures are contemplated by section 1008. The applications authorized under subdivision (b) properly allow an application upon "new facts" to be made at virtually any time prior to final determination of the action because to limit such motions to within ten days of the original ruling would unreasonably require the moving party to fortuitously discover the critical new facts within that short period. By contrast, subdivision (a) imposes the 10-day limitation period but does not require that the "alleged different facts" supporting the motion be "new."

*Blue Mountain Development Co.* v. *Carville* (1982) 132 Cal.App.3d 1005, 1012-1014 [183 Cal.Rptr. 594], reaches the same conclusion as to the distinct requirements of subdivisions (a) and (b) of section 1008 as to interim orders.

Conceding that plaintiffs' motion for reconsideration need not be based upon newly discovered facts, the question remains whether the "alleged different state of facts" required under subdivision (a) may be properly alleged in an unverified proposed amended complaint. ■ While evidentiary facts would ordinarily have to be verified in some manner to be cognizable in support of a motion, the state of facts determinative on a demurrer to a complaint need not be. The allegations of a complaint subject to challenge on demurrer are presumed to be true whether or not the complaint is verified. (3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, § 800, p. 2413.) ■ Accordingly, it is sufficient that the plaintiffs alleged different facts in their proposed third amended complaint upon which respondent could determine as a matter of law whether a cause is pleaded.

■ In view of these considerations, it must be concluded that respondent abused its discretion in awarding $1,000 in attorneys' fees as a sanction. Plaintiffs sought reconsideration of the original order sustaining the demurrer in a manner not abusive of section 1008, subdivision (a) of the Code of Civil Procedure. Presentation of the different fact allegations plaintiffs believed cured the defect in their second amended complaint was directed toward persuading respondent that a valid cause could be pleaded with these new facts. It is not apparent that plaintiffs sought such reconsideration in bad faith or that the contentions there advanced were believed by them to be frivolous. In fact, their contentions were meritorious.

■ However, plaintiffs' motion for new trial was clearly frivolous and inappropriate in the context of an order sustaining a demurrer to a portion

of a complaint without leave to amend. Accordingly, respondent was justified in imposing monetary sanctions against plaintiffs and their counsel based upon the expense occasioned defendants in opposing that inappropriate motion. This sanction should be a small portion of the $1,000 originally imposed, as defendants' meritorious opposition to the motion for new trial required little effort or research. It is evident that the great majority of defendants' expenses were incurred in opposition to the motion for reconsideration. Thus, respondent should reconsider the amount of the monetary sanctions imposed.

Let a peremptory writ of mandate issue directing respondent to vacate its orders of April 25, 1983, and June 16, 1983, sustaining defendants' demurrer without leave to amend and denying plaintiffs' motion for reconsideration with imposition of sanctions, respectively, and to make a new and different order accepting plaintiffs' third amended complaint as including a cognizable cause of action for battery and imposing monetary sanctions against plaintiffs and their counsel based only upon defendants' expense in opposing the inappropriate motion for new trial.

Kingsley, J., and Amerian, J., concurred.