[No. D010482. Fourth Dist., Div. One. Oct. 10, 1989.]

ELIZABETH M. FREEDMAN, Petitioner, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
PHILLIP YOUNG et al., Real Parties in Interest.

COUNSEL

Elizabeth M. Freedman, in pro. per., for Petitioner.

No appearance for Respondent.

Neil, Dymott, Perkins, Brown & Frank, Sheila S. Trexler and Daniel W. Kelsberg for Real Parties in Interest.

OPINION

FROEHLICH, J.—Petitioner joined physicians, a professional medical corporation and a hospital in a complaint for medical malpractice. The court sustained a demurrer without leave to amend as to the third cause of action of the first amended complaint, which purported to allege a battery. We entertain the petition because the striking of this cause of action from plaintiff's complaint would bar an allegedly substantial portion of plaintiff's

case from hearing on the merits, and the issue raised appears to be novel and of significance to the resolution of an important aspect of malpractice cases. (See *Taylor* v. *Superior Court* (1979) 24 Cal.3d 890, 894 [157 Cal.Rptr. 693, 598 P.2d 854]; *Vasquez* v. *Superior Court* (1971) 4 Cal.3d 800, 807 [94 Cal.Rptr. 796, 484 P.2d 964, 53 A.L.R.3d 513]; *Nazaroff* v. *Superior Court* (1978) 80 Cal.App.3d 553, 557-558 [145 Cal.Rptr. 657]; 8 Witkin, Cal. Procedure (3d ed. 1985) Extraordinary Writs, §§ 116, 118, pp. 751-755.)

## PROCEDURAL BACKGROUND

The defendants interposed a general demurrer as to the third cause of action on the ground that it did not constitute a valid action in battery and that it was barred by the statute of limitations. The trial court's sustaining of the demurrer was stated to be upon the basis of inability to state a cause of action for battery, and in any event it appears that petitioner did or could have avoided the statute of limitations by pleading late discovery. We therefore direct our attention only to the issue of the pleading of battery.

In this review we are governed by the familiar principle that in testing a complaint by demurrer the trial court is bound to assume the provability of the allegations of the complaint and may not consider facts or allegations dehors the pleading. (5 Witkin, Cal. Procedure (3d ed. 1985) Pleading, § 895, pp. 334-337.)

The event giving rise to the malpractice claim was the birth of a child and the medical care attendant thereupon. Joined as plaintiffs are the mother in her own right and the mother as guardian ad litem for the child. The negligence causes of action set forth claims for both mother and child. The battery claim (as well as the cause of action for "fraud"), however, appears to allege an action only on behalf of the mother. Since only the battery count is in issue in this petition, we therefore deal only with the claims of the mother, referring to her as "plaintiff."

Plaintiff alleges she commenced labor on September 12, 1987, at 7:15 a.m., that she went to the hospital at 10:53 a.m., and that her delivery by caesarian section occurred at 12:22 a.m. on September 13, the following day. Before going to the hospital plaintiff called one of her physicians (all of whom are alleged to be agents of the others) to advise of her commencement of labor. She was instructed by her physicians to go to the hospital and to accept the administration of the drug Pitocin. In her negligence cause of action plaintiff states that the physicians "failed to disclose material risks of the procedure," which included augmentation of labor contractions, the resulting necessity of pain medication and anesthesia, relinquishment of control over the patient's body during labor and confinement to bed, and

the possibility of requirement of caesarian section. Plaintiff alleges that Pitocin was not indicated under her circumstances and that the physicians "failed to disclose material information regarding the propriety of Pitocin administration."

These allegations are incorporated in the cause of action for battery. In addition, it is alleged that when the physician instructed plaintiff to accept the administration of Pitocin "he knowingly and intentionally misrepresented to her that Pitocin was necessary to prevent infection." Had plaintiff known the true nature and purpose of the drug, she alleges, she would not have consented to its use; therefore, her consent was fraudulently obtained and is not effective as a defense against what it is alleged turned out to be a damaging battery. Although perhaps not obvious from the strict terminology of the complaint, briefing and argument at both the trial court and appellate court level make clear that all parties as well as the trial court assumed (reasonably we believe) the pleading to acknowledge that (1) Pitocin is a drug which is acceptable for use in connection with childbirth under certain circumstances, but that (2) its purpose is not to prevent infection but to induce labor.

The trial court, in ruling from the bench on the demurrer, considered these allegations likely to amount to a claim in fraud, but discounted their effectiveness in terms of battery. The court stated: "I think the key is whether or not the procedure was therapeutic in a medical sense. The fact that the therapy may be different than you understood it to be does not take it out of the range of being therapeutic. . . . [H]ere you were being administered a medication. It just turns out it's your opinion that the medication . . . was not for the purpose you were told it was for, but still the medication administered, even in your own statements here, [was] for a therapeutic basis, even though it may not have been for what you wanted the medicine to be administered for."

## DISCUSSION

It would appear that the trial court's decision was based upon *Rains* v. *Superior Court* (1984) 150 Cal.App.3d 933 [198 Cal.Rptr. 249]. In that case the consent of psychiatric patients to violent therapy (called "sluggo therapy") was held ineffective when it had been induced by the physician's representation that its purpose was therapeutic when (as alleged) the real purpose was "the improper ulterior purpose of subjugating plaintiffs and controlling their behavior to defendants' personal advantage." (*Id.* at p. 936.) The court in discussing its conclusion that these allegations stated a cause of action in battery emphasized the nontherapeutic versus therapeutic purpose of the physicians' ministration, stating: "No persuasive reason is

advanced by defendants, nor is any apparent to this court, why physicians, to the exclusion of all other persons, should enjoy total immunity from liability where they intentionally deceive another into submitting to otherwise offensive touching to achieve a nontherapeutic purpose known only to the physician. If a physician, for the sole secret purpose of generating a fee, intentionally misrepresented to a patient that an unneeded operation was necessary, it is beyond question that the consent so obtained would be legally ineffective.

"This court is persuaded by the authorities discussed herein that the therapeutic versus nontherapeutic purpose of touching by a psychiatrist goes to the 'essential character of the act itself' and thus vitiates consent obtained by fraud as to that character. [¶] [T]he sole question is whether the plaintiffs can possibly allege facts stating a cause for battery against their psychiatrists. To prevail on such a theory plaintiffs must prove at trial that defendants' true purpose in employing violent physical contact upon plaintiffs was to achieve the secret personal purposes alleged rather than the announced purpose of curing the mental disorders of the plaintiffs." (*Id.* at p. 941.)

■ In its use of the phrase "essential character of the act," the *Rains* court was referring to a distinction made in legal texts as to the varying kinds of misrepresentations which can give rise to mistaken consent. To vitiate consent the mistake " 'must extend to the essential character of the act itself, which is to say that which makes it harmful or offensive, [citation] rather than to some collateral matter which merely operates as an inducement. . . .' " (*Rains* v. *Superior Court, supra,* 150 Cal.App.3d 933 at p. 939.) (See also Rest.2d Torts, § 892B, com. i, pp. 374-375; Prosser & Keaton, Torts (5th ed. 1984) § 18, p. 112.)

The illuminating example given in the texts is that of the seduction of the voice pupil by the choirmaster upon the representation that it would improve her voice; as compared to the seduction of a woman by the false promise of marriage. In the first instance the physical contact is a battery because the "essential character" of the act has been misrepresented—it is not an exercise for voice improvement but for the personal gratification of the seducer. In the second case both parties know the "essential character" of the act, and the inducement which gains the consent relates to a collateral matter: marriage. In *Rains,* the patients knew what was to be done to them, but the "essential character" of the act was not what they were told (therapy) but an independent and personal objective of the physicians (control of the patient).

■ Plaintiff's situation does not equate to that of the *Rains* plaintiffs. She was, like them, induced to accept treatment upon false representations.

It is *not* alleged, however, that the purpose of the physicians was other than the rendition of therapeutic treatment. Nor is it contended that the deception by the physicians was for any independent or improper motive on their part.[1] She argues that she has alleged the use of Pitocin in her case to be contraindicated, i.e., to be an erroneous prescription. Therefore, she says, the treatment cannot be deemed "therapeutic." We disagree. In our view the use of a drug or treatment which is accepted, generally, by the profession, does not become a nontherapeutic use because the physician prescribes it at the wrong point in the treatment process. We believe the term "therapeutic" is used in these cases to distinguish drugs or treatments which are *intended* to affect treatment and cure, as distinguished from applications which do not have that objective. That the intent was misguided or the utilization of the particular therapy inappropriate does not detract from the characterization of the application as "therapeutic."

Following the rationale of *Rains,* therefore, we are motivated to conclude that the plaintiff cannot sustain a cause of action for battery by virtue of the stated allegations. She was induced to accept a drug by deception, but the deception did not have to do with the mutual purpose of patient and physician, which was treatment. They both knew the "essential character" of the treatment, and the deception by the physician as to the specific medical objective was a collateral matter not vitiating consent.

Does this conclusion constitute condonation of deception by physicians? Does it deprive plaintiff of her just remedy? It does neither. Plaintiff has stated a good cause of action for negligence, and probably for deceit. Our decision simply recognizes these remedies as preferable, under all the circumstances, to a packaging of her action in terms of battery.

We are guided in this conclusion by the other major California authority in this general area, which is *Cobbs* v. *Grant* (1972) 8 Cal.3d 229 [104 Cal.Rptr. 505, 502 P.2d 1]. This case dealt with lack of informed consent to a surgical operation, the physician's neglect being his failure adequately to

---

[1] In oral argument, for the first time insofar as the record reveals, plaintiff suggested that the purpose of her deception might have been the selfish objective of the physicians to speed her labor so as to avoid attendance at the hospital on the weekend (we judicially notice that September 12 and 13, 1987, were a Saturday and a Sunday). Had this allegation been made in plaintiff's amended complaint the ruling below might well have been different, because we conceive this would have been a deception indeed going to the "essential character" of the act to which consent was given. We decline to consider this suggestion, however, not only because it was proposed at the appellate hearing without any prior notice to court or opposing counsel and without any documentary support, but because the contention was not presented to the trial court. "The appellate court is ordinarily confined in its review to the proceedings which took place in the court below and are brought up for review in a properly prepared record on appeal." (9 Witkin, Cal. Procedure (3d ed. 1985) Appeal § 250, p. 256.)

inform the patient of possible deleterious complications. In an opinion by Justice Mosk, the court recognized that consent given by a patient who has not been fully informed as to untoward consequences has been held in a number of jurisdictions to be defective, giving rise to a claim in battery. It concluded that this professional error more properly resembled negligence than the intentional tort of battery. In so doing the court noted a number of differences in procedure and proof between the two torts, including: expert opinion as to community standards is not required for battery; battery permits punitive damages; battery introduces a claim which may not be covered by insurance. (*Id.* at p. 240.) We would add that battery requires no showing of "scienter" or any intent to do wrong—only an intent to cause the harmful unconsented touching. (Rest.2d Torts (1965) § 13, p. 25.)

The *Cobbs* court concluded that a patient whose consent had been exceeded by a well-meaning physician attempting therapeutic treatment should be relegated to a negligence cause of action. Our conclusion is that a patient whose consent has been obtained by a well-meaning deception as to the precise medical effect of the treatment should also be relegated to a negligence action.[2]

Without claiming any accurate knowledge of the field (and certainly without any factual briefing from the parties) we nevertheless presume that there are many cases in which drugs are prescribed by physicians which are not completely appropriate in the particular circumstance. It is common knowledge that physicians often do not adequately explain treatment to patients, and it is perhaps even more common that regardless of the

[2]It is necessary in this discussion that we deal with *Berkey* v. *Anderson* (1969) 1 Cal.App.3d 790 [82 Cal.Rptr. 67]. A case pleaded in negligence, the issue of informed consent was nevertheless presented. The patient had received electromyograms in prior treatment, and he was induced to give consent to a myelogram (a much more serious and risky procedure) by the misrepresentation that it was much the same as an electromyogram. The court stated: "If appellant did not give his informed or knowledgeable consent, the performance of the myelogram would constitute a technical battery . . . ." (*Id.* at p. 803.) *Berkey* is characterized in *Cobbs* as a case in which "a doctor obtains consent of the patient to perform one type of treatment and subsequently performs a substantially different treatment for which consent was not obtained . . . ." (*Cobbs* v. *Grant, supra,* 8 Cal.3d at p. 239.) If the *Cobbs* characterization of *Berkey* is accepted, our decision is not in conflict with *Berkey*. It could be argued, however, that the patient in *Berkey* gave consent to the very procedure which was performed, being mistaken only in terms of its gravity. While we would not suggest distinctions in terms of the physical nature of the touching (punctures or cuttings being batteries and ingestion of medication not, for instance), we nevertheless recognize that the validity of the consent may rest in some cases on the patient's reasonable understanding of the mechanics of what is to be done. A serious spinal tap is quite a different thing from the attachment of electrodes. We prefer, however, to recognize that a plain reading of *Berkey* may lead to the conclusion that our decision herein is not completely in harmony therewith, and we justify same by noting that the issue has been met directly in this case, while only peripherally addressed in *Berkey*.

explanation the patient does not fully understand the ramifications of the treatment. We would expect it to be a very common phenomenon that patients whose course of treatment turns unsuccessful would, on reflection, conclude that had they known at the beginning what they know at the end they would not have permitted the treatment. We believe that the pleading of such cases should be restricted to negligence, or with appropriate facts to the tort of deceit, and that it will not serve society to permit the bringing of such actions as batteries.

Therefore, having accepted this petition for extraordinary review upon the preliminary impression that precluding the battery count might unreasonably gut plaintiff's case, we conclude that the trial court was after all correct in its ruling. We therefore deny the petition.

Kremer, P. J., and Huffman, J., concurred.

A petition for a rehearing was denied November 1, 1989, and petitioner's application for review by the Supreme Court was denied January 17, 1990.