[No. B043675. Second Dist., Div. Seven. Mar. 15, 1991.]

DAISY ASHCRAFT, Plaintiff and Appellant, v. JOHN D. KING, Defendant and Respondent.

## COUNSEL

Ian Herzog and Evan Marshall for Plaintiff and Appellant.

Baker, Silberberg & Keener, Robert C. Baker, Thelen, Marrin, Johnson & Bridges, Curtis A. Cole, Teresa J. Hermosillo, Brooks P. Marshall, Yusim, Stein & Hanger and Andrew Stein for Defendant and Respondent.

## OPINION

**JOHNSON, J.**—Plaintiff appeals from a judgment for defendant in this medical malpractice case. Because plaintiff was erroneously nonsuited on her battery cause of action we reverse the judgment as to that cause of action. In all other respects the judgment is affirmed.

### FACTS AND PROCEEDINGS BELOW

In 1983, plaintiff Daisy Ashcraft, age 16, was diagnosed as having scoliosis, a curvature of the spine, destined to become debilitating if not corrected. Ms. Ashcraft was referred to defendant John D. King, M.D., an orthopedic surgeon.

Ms. Ashcraft went to Dr. King's office for a consultation. She was accompanied by her mother, Lulu Ashcraft. At that meeting Dr. King recommended surgery and described the procedure generally. During the course of the consultation Dr. King and the Ashcrafts discussed the subject of blood transfusions, including the use of family-donated blood in the operation.

Lulu Ashcraft and Dr. King gave very different accounts of the conversation about use of family-donated blood, and their two versions were among

the principal factual issues at trial. We discuss this testimony in more depth below. (See pp. 612-613, *post.*) Essentially, plaintiff's mother testified she insisted the operation be performed using only family-donated blood. Dr. King conceded the subject of family-donated blood was discussed but only in terms of whether it was "possible" for the family to donate blood to be used in Ms. Ashcraft's operation. Both parties agree Dr. King informed Ms. Ashcraft and her mother they should contact officials at Children's Hospital, where the operation would be performed, to arrange for family-donated blood.

Ms. Ashcraft's mother and father and several other relatives went to Children's Hospital and gave blood before and during the operation. None of this blood ever went to Daisy Ashcraft. Instead, all of the blood Ms. Ashcraft received during the operation came from the general supplies on hand at Children's Hospital.

At the time of this surgery, in 1983, no test was available to determine whether blood was contaminated with the human immunodeficiency virus (HIV), the cause of AIDS. It was not until 1987 the hospital discovered Daisy Ashcraft had been transfused during surgery with blood from an HIV positive donor. Ms. Ashcraft went to the hospital for a blood test the day she received this information. The test was positive.

In her medical malpractice suit against Dr. King, Ms. Ashcraft sought damages on the theories of negligence and battery. The battery theory rested on Ms. Ashcraft's contention she had specifically conditioned her consent to surgery on the understanding only family-donated blood would be used in her transfusions but Dr. King willfully ignored that condition.

After all the evidence was received, the trial court granted Dr. King's motion for nonsuit on the battery cause of action. The case was submitted to the jury only on the negligence theory. After five days of deliberation, the jury returned a verdict in favor of defendant by a vote of nine to three.

I. *A Patient Has the Right to Impose Express Limitations or Conditions on a Doctor's Authority to Perform an Operation. A Doctor Is Subject to Liability for Battery for Exceeding the Conditions Imposed by the Patient.*

As a general rule, one who consents to a touching cannot recover in an action for battery. (Rest.2d Torts, § 892A.) Thus, one who gives informed consent to a surgery cannot recover for resulting harm under a theory of battery. (*Cobbs* v. *Grant* (1972) 8 Cal.3d 229, 239 [104 Cal.Rptr. 505, 502 P.2d 1]; *Keister* v. *O'Neil* (1943) 59 Cal.App.2d 428, 434-435 [138

P.2d 723].) However, it is well recognized a person may place conditions on the consent. If the actor exceeds the terms or conditions of the consent, the consent does not protect the actor from liability for the excessive act. (Rest.2d Torts, § 892A(3), (4), com. h, p. 369.)

The rule of conditional consent has been applied in battery actions against physicians and surgeons in California and many other jurisdictions. (*Grieves* v. *Superior Court* (1984) 157 Cal.App.3d 159, 165 [203 Cal.Rptr. 556] [consent to tubal ligation only if baby born without deformities]; *Keister* v. *O'Neil, supra,* 59 Cal.App.2d at pp. 434-435 [operation consented to but "absolutely did not want . . . a spinal anesthetic"]; *Clark* v. *Miller* (Minn.Ct.App. 1986) 378 N.W.2d 838, 847 [surgical procedure authorized only if doctor discovered arthritis or malalignment]; *Chambers* v. *Nottebaum* (Fla.Dist.Ct.App. 1957) 96 So.2d 716, 717-718 [operation consented to but patient "would not permit a spinal anesthetic"]; *Moscicki* v. *Shor* (1932) 107 Pa. Super. 192 [163 A. 341, 341-342] [patient consented to extraction of some but not all defective teeth]; *Rolater* v. *Strain* (1913) 39 Okla. 572 [137 P. 96, 97-98] [patient consented to operation upon "express condition that no bone should be removed from her foot"].)

In the present case, Ms. Ashcraft's claim of battery rested on the theory that although the operation was consented to, the consent was subject to a specific condition: only family-donated blood would be used. If Ms. Ashcraft could establish the existence of this condition and its breach by Dr. King, she would establish a battery.[1]

## II. *Plaintiff Introduced Sufficient Evidence of Battery to Have the Claim Determined by the Jury.*

At the close of evidence from both parties the trial court granted defendant's motion for nonsuit as to the cause of action for battery. For the reasons discussed below, granting the motion was prejudicial error.

■ The law governing nonsuits is well settled:

"A nonsuit may be granted after the plaintiff's presentation of evidence only when no evidence of sufficient substantiality exists to support a verdict for plaintiff [*O'Keefe* v. *South End Rowing Club* (1966) 64 Cal.2d 729, 733, 746 51 Cal. Rptr. 534, 414 P.2d 830; *Conservatorship of Everette M.* (1990) 219 Cal.App.3d 1567, 1574, 269 Cal. Rptr. 182].

---

[1] Defendant does not contend breach of such a condition was justified by any emergency arising during the course of the operation. (See *Preston* v. *Hubbell* (1948) 87 Cal.App.2d 53 [196 P.2d 113].)

"In determining a motion for nonsuit based on the insufficiency of the plaintiff's evidence, the court may not weigh the evidence or judge the credibility of witnesses [*Carson* v. *Facilities Development Co.* (1984) 36 Cal.3d 830, 838-839, 206 Cal.Rptr. 136, 686 P.2d 656; *Reynolds* v. *Natural Gas Equipment, Inc.* (1960) 184 Cal.App.2d 724, 731, 7 Cal. Rptr. 879]. The court must accept all evidence favorable to the plaintiff as true, and must disregard all conflicting evidence [*Carson* v. *Facilities Development Co.* (1984) 36 Cal.3d 830, 838-839, 206 Cal.Rptr. 136, 686 P.2d 656; *Campbell* v. *General Motors Corp.* (1982) 32 Cal.3d 112, 118, 184 Cal.Rptr. 891, 649 P.2d 224]. When the plaintiff has adduced the testimony of an adverse witness under Evidence Code section 776, portions of the testimony favorable to the plaintiff must be taken as true, and unfavorable portions must be disregarded [*Morgenroth* v. *Pacific Medical Center, Inc.* (1976) 54 Cal.App.3d 521, 526 Cal.Rptr. 681; *Leno* v. *Young Men's Christian Assn.* (1971) 17 Cal.App.3d 651 657, 95 Cal. Rptr. 96]. If the existence of facts sufficient to support a recovery can logically and reasonably be inferred from the evidence, the motion must be denied, regardless of whether the evidence is also susceptible to conflicting inferences [*Dimond* v. *Caterpillar Tractor Co.* (1976) 65 Cal.App.3d 173, 181, 134 Cal.Rptr. 895]. There must be, however, some substance to the plaintiff's evidence upon which reasonable minds could differ; proof that raises mere *speculation, suspicion, surmise, guess, or conjecture is not* sufficient [*Campbell* v. *Security Pac. Nat. Bank* (1976) 62 Cal.App.3d 379, 384-885, 133 Cal. Rptr. 77, italics added; *Conservatorship of Everett M.* [supra, 215 Cal.App.3d at p. 1574]. When there is doubt in the court's mind about the inferences that may reasonably be drawn from the evidence it is the duty of the court to let the case go to the jury [*Golceff* v. *Sugarman* (1950) 36 Cal.2d 152, 153, 222 P.2d 665; *Agnew* v. *Parks* (1959) 172 Cal.App.2d 756, 774, 343 P.2d 118]." (4 Johnson, Cal. Trial Guide (1990) § 80.01 [2][b], pp. 80-5-80-6.)

It is equally well settled what elements Ms. Ashcraft had to introduce evidence of in order to survive a motion for nonsuit. ██ A battery is any intentional, unlawful and harmful contact by one person with the person of another. (*Delia S.* v. *Torres* (1982) 134 Cal.App.3d 471, 480 [184 Cal.Rptr. 787]; and see Rest.2d Torts, § 18.) A harmful contact, intentionally done is the essence of a battery. (See 5 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 347, p. 437.) A contact is "unlawful" if it is unconsented to. (*Estrada* v. *Orwitz* (1946) 75 Cal.App.2d 54, 57 [170 P.2d 43].) In order to recover on a theory of battery, Ms. Ashcraft had to establish: (1) her consent to the operation was conditioned on the use of only family-donated blood; (2) defendant intentionally violated this condition while performing the operation; (3) Ms. Ashcraft suffered harm as a result of defendant's violation of the condition.

At trial it was undisputed no family-donated blood was used in the operation on Ms. Ashcraft. It was also undisputed some of the blood given Ms. Ashcraft in the operation was contaminated with the HIV, the cause of AIDS, and that as a result Ms. Ashcraft is HIV positive. ■■■ Therefore, the questions on appeal are whether, accepting all evidence favorable to the plaintiff as true, indulging every legitimate favorable inference that can be drawn from it, and disregarding all conflicting evidence and inferences, there was sufficient evidence from which the jury could have determined Ms. Ashcraft's consent to the operation was conditioned on the use of family-donated blood only and that defendant intentionally exceeded this condition in performing the operation.

We have concluded Ms. Ashcraft's evidence was sufficient to meet this test and, thereby, overcome the motion for nonsuit.

### A. *Consent Conditional on Family-donated Blood*

Lulu Ashcraft, Ms. Ashcraft's mother, testified that when she and Ms. Ashcraft first discussed the surgery with the defendant, Dr. King, "he said that they will recycle her blood and he said there may be some more blood required, and I told Dr. King that I wanted . . . only family blood." Dr. King responded that Ms. Ashcraft should make arrangements for family-donated blood directly with the hospital. On cross-examination, Lulu Ashcraft testified she specifically remembered telling Dr. King, at their first meeting, she wanted "only family blood," and, in her deposition testimony read to the jury, Lulu Ashcraft testified as follows:

"Q. . . . During that visit with Dr. King did you tell him what you were afraid of?

"A. . . . I can't remember, seems that I did and that I was afraid of Daisy catching disease and that's why I wanted family blood only."

The plaintiff, Ms. Ashcraft, testified about her first meeting with defendant as follows:

"Q. Did the subject matter of blood come up?

"A. Yes.

"Q. . . . And how did that come up and who said what to whom?

"A. Dr. King said I may require some blood when he explained to my mom and that they would use a cell saver. And she said, the only thing, Dr. King is that I want Daisy to have family blood.

"Q. And then what was said with regard to that by any one?

"A. Dr. King said, that's fine.

"Q. And did he say anything else besides, that's fine?

"A. No."

Based on the testimony of Ms. Ashcraft and her mother that they wanted only "family blood" used in the operation and defendant's acknowledgement: "that's fine," and his instruction to the Ashcrafts to contact the hospital to make arrangements, the jury could have found Ms. Ashcraft's consent to the operation was conditioned on the use of "family blood."

### B. *Intent to Act in Excess of the Conditional Consent*

■ In an action for civil battery the element of intent is satisfied if the evidence shows defendant acted with a "willful disregard" of the plaintiff's rights. (*Lopez* v. *Surchia* (1952) 112 Cal.App.2d 314, 318 [246 P.2d 111].) In the context of battery in a medical procedure, "[w]hen the patient gives permission to perform one type of treatment and the doctor performs another, the requisite element of deliberate intent to deviate from the consent given is present." (*Cobbs* v. *Grant, supra,* 8 Cal.3d at p. 240.)

■ Evidence in this case showed defendant had permission to operate on condition he used family-donated blood but that he operated using blood from the hospital's general supply. Under the rationale of *Cobbs,* this evidence was sufficient to allow the jury to infer an intent to willfully disregard plaintiff's conditional consent.

### C. *Defendant's "Collateral Matter" Theory*

■ Defendant responds that even if Ms. Ashcraft's consent to surgery was conditioned on the use of family-donated blood his violation of that condition did not result in a battery because the condition related only to a "collateral matter." The cases defendant cites do not support his argument. (See *Freedman* v. *Superior Court* (1989) 214 Cal.App.3d 734 [263 Cal.Rptr. 1]; *Rains* v. *Superior Court* (1984) 150 Cal.App.3d 933 [198 Cal.Rptr. 249].) *Freedman* and *Rains* dealt with the question whether a battery action would lie against a doctor on the basis of the patient's *mistaken* consent to treatment. In *Rains,* the plaintiffs, psychiatric patients, agreed to beat each other up after defendants fraudulently represented to them this "sluggo therapy" would have a therapeutic benefit. (150 Cal.App.3d at p. 936.) In *Freedman,* the plaintiff consented to use of the drug Pitocin during labor on

defendant's representation it would prevent infection when, in fact, it was being prescribed to induce labor. (214 Cal.App.3d at p. 737.) The court in *Freedman* held: "To vitiate consent the mistake ' "must extend to the essential character of the act itself, which is to say that which makes it harmful or offensive . . . rather than to some collateral matter which merely operates as an inducement. . . ." ' " (214 Cal.App.3d at p. 738, quoting *Rains, supra,* 150 Cal.App.3d at p. 939.) In *Rains,* the court held "sluggo therapy's" lack of therapeutic value vitiated plaintiff's consent but in *Freedman* the essential character of the treatment was therapeutic "and the deception by the physician as to the specific medical objective was a collateral matter not vitiating consent." (214 Cal.App.3d at p. 739.)

The irrelevance of *Freedman* and *Rains* to the present case is readily apparent. Ms. Ashcraft did not contend she made a mistake in consenting to the operation or that defendant engaged in any fraud or misrepresentation as to the therapeutic character of the proposed treatment.

Where, as here, the patient has expressly conditioned her consent on certain acts being performed by the doctor, the patient has made that condition or event a matter of primary importance. To label such a condition merely "collateral" is to ignore the patient's "right, in the exercise of control over his own body to determine whether or not to submit to lawful medical treatment." (*Cobbs* v. *Grant, supra,* 8 Cal.3d at p. 242 and see Rest.2d Torts, § 892A and coms. following.)

### D. *Prejudicial Error*

▮ Defendant next argues even if the trial court erred in granting the motion for nonsuit the error was harmless. If the jury had concluded consent to the operation was conditioned on defendant's use of family-donated blood the jury would have given a judgment for plaintiff on the basis of lack of informed consent.

In support of this argument, defendant points out the nonsuit was not granted until the close of all testimony. Therefore, all the evidence in support of a conditional consent was before the jury. The jury was instructed,

"It is the duty of a physician to obtain the consent of a patient before treating or operating on the patient. . . . [I]t is the duty of the physician to disclose to the patient all material information to enable the patient to make an informed decision regarding the proposed operation or treatment.

"Material information is information which the physician knows or should have known would be regarded as significant by a reasonable person

in the patient's position when deciding to accept or reject a recommended medical procedure.

"Even though the patient has consented to a proposed treatment or operation, the failure of the physician to inform the patient as stated in this instruction before obtaining such consent is liability. . . ."

Defendant also points out plaintiff argued the conditional consent theory to the jury in the context of informed consent.[2]

The error in granting the nonsuit on battery was not harmless. ▪ ▪ ▪ ▪ ▪ Having granted the motion for nonsuit, the trial court quite naturally refused to give plaintiff's requested instruction on battery;[3] nor did the court instruct the jury it would be negligence for defendant to proceed with the operation in a manner contrary to the condition plaintiff imposed on her consent.[4] The court *did* instruct the jury, "the failure of the physician to inform the patient [of material information] *before* obtaining [her] consent is negligence . . . ." (Italics added.) This instruction had no bearing on plaintiff's conditional consent theory of battery.

We fail to see how the failure to give instructions on *battery* can be cured by giving instructions on *negligence*, especially where the instructions never

---

[2] In closing argument, plaintiff's counsel told the jury,

"A separate basis for liability, totally apart from the duty of a physician to not only have the knowledge but to use it and to use reasonable diligence and to use his best judgment, is called informed consent. And he must get the consent and it's required to get the consent of Lulu, because she is the parent, before treating her daughter.

"Part of that consent was her belief that the daughter was going to get family blood. And Dr. King has a duty to get the consent before treating the patient with family blood.

"Now, if there was any doubt in Dr. King's mind as to whether Lulu really meant it when she said she wanted family blood he should have done what Dr. Marrero said he should have done and that is as Dr. Marrero says, if you have any doubt about informed consent, you have any doubt as to what the patient really means it, you sit down with them in the office, and you ask them questions so that you can make a determination as to whether, in fact, the patient means it. He didn't do that."

[3] Defendant contends plaintiff's proposed instruction on battery was not a correct statement of the law. The trial court did not rule on this point and we need not address it here. On retrial, counsel and the court may wish to consider the conditional consent instruction approved in *Clark* v. *Miller, supra,* 378 N.W.2d at page 847. That instruction provides:

"Ordinarily, a doctor may not perform an operation on a patient without the patient's consent, stated directly or implied. A patient also has the right to impose express limitations or conditions on the doctor's authority to perform an operation." (*Ibid.*)

[4] The blame for the court's failure to give such an instruction does not lie with the plaintiff. Despite her argument to the jury attempting to salvage her conditional consent theory, the defendant's failure to comply with plaintiff's conditional consent sounds in battery, not negligence. When the court has refused to instruct on a legally correct theory the plaintiff is not required to propose an instruction on a legally incorrect theory in order to preserve the error on appeal.

mention plaintiff's theory of conditional consent. The jury could have found defendant adequately informed Ms. Ashcraft of all significant risks of the surgery, including the risk involved in blood transfusions, *before* obtaining her consent and still have found defendant liable for battery because he violated the conditional consent Ms. Ashcraft gave after being informed of those risks. Therefore, this is not a case in which it is possible to say that although an instruction on one theory of liability was erroneously omitted, the factual question posed by the omitted instruction was necessarily resolved adversely to the plaintiff under other, properly given, instructions. (See *People* v. *Sedeno* (1974) 10 Cal.3d 703, 721 [112 Cal.Rptr. 1, 518 P.2d 913].)

After considering the evidence introduced by Ms. Ashcraft on the issue of conditional consent, we are of the opinion it is reasonably probable a result more favorable to her would have been reached had the trial court not erroneously granted the motion for nonsuit. (*Daly* v. *General Motors Corp.* (1978) 20 Cal.3d 725, 746 [144 Cal.Rptr. 380, 575 P.2d 1162]; *People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].)

### III. *The Trial Court Did Not Abuse Its Discretion in Denying Plaintiff's Motion for a New Trial.*

Plaintiff's notice of motion for new trial purports to base the motion on all grounds specified in Code of Civil Procedure section 657. The declaration of plaintiff's counsel in support of the motion, however, focuses on insufficiency of the evidence to support the verdict and the trial court's failure to give specific answers to questions submitted by the jury in the course of their deliberations.

A new trial based on insufficiency of the evidence is not permitted unless the trial court "is convinced" from all the evidence the jury "clearly should have reached a different verdict." (Code Civ. Proc., § 657.)

■ In ruling on a motion for new trial the court has very broad discretion, and its decision granting or denying the motion will not be disturbed on appeal unless there is a clear showing of an abuse of that discretion. (*Mills* v. *Vista Pools, Inc.* (1960) 184 Cal.App.2d 668, 672-673 [7 Cal.Rptr. 545].)

■ In reviewing the motion for new trial on the ground of insufficiency of the evidence, we do not find the trial court applied the wrong standard in ruling on the motion or any other ground for saying the court abused its discretion. The court's critical remarks about defendant's personality and

that "Had I been deciding this case, I probably would have ruled the other way" do not amount to grounds for a new trial.

Plaintiff's second ground for requesting a new trial, and a point urged separately on appeal, relates to the trial court's refusal to supply specific answers to the 13 questions the jury submitted to the court during deliberation. Instead of supplying specific answers, the court instructed the jury to proceed by first determining if defendant had been negligent; if so, whether his negligence was the legal cause of plaintiff's injury; and, if so, what amount of damages should be awarded.

Under the circumstances the court could not reasonably have done more. Some of the jury's questions would have required the court to develop new instructions, e.g., "Explain in more detail what is meant by negligent [*sic*]"; "Define legal cause." Some involved philosophical and moral issues, e.g., "Does negligence mean that the person did something wrong?" Some were totally irrelevant, e.g., "Are the only legal definitions of negligence those defined in the instructions?" If the court and the parties had attempted to draft specific answers to the jury's questions, they might still be at that task. Moreover, we do not believe it is reasonably probable that had they engaged in that task a result more favorable to the plaintiff would have resulted. As plaintiff points out, the theory of battery was far more appropriate to the evidence in this case than the theory of negligence. The gist of this case was that defendant proceeded in a manner in excess of his authority derived from the conditional consent of plaintiff, not that he proceeded in a negligent manner.[5]

## DISPOSITION

The judgment is reversed only as to plaintiff's cause of action for battery and, as to that cause of action, the matter is remanded to the trial court for further proceedings consistent with this opinion. In all other respects, the judgment is affirmed. Each party to bear its own costs on appeal.

Lillie, P. J., and Woods (Fred), J., concurred.

Respondent's petition for review by the Supreme Court was denied June 20, 1991. Panelli, J., was of the opinion that the petition should be granted.

---

[5] Contrary to defendant's suggestion, we do not find the appeal frivolous as to denial of a new trial.