[No. B191118. Second Dist., Div. Eight. Apr. 29, 2008.]

LARRY KAPLAN, Plaintiff and Appellant, v.
ADAM N. MAMELAK, Defendant and Respondent.

COUNSEL

The Meenan Lariviere Law Firm and Kevin Meenan for Plaintiff and Appellant.

Law + Brandmeyer, Kent T. Brandmeyer and David J. Ozeran for Defendant and Respondent.

OPINION

**RUBIN, J.**—Larry Kaplan appeals from the trial court's judgment dismissing his medical malpractice complaint against Adam N. Mamelak, M.D. We reverse and remand for further proceedings.

## FACTS AND PROCEEDINGS

Appellant Larry Kaplan suffered pain from a herniated disk in his spine. The disk, identified as T8-9, lay between the eighth and ninth thoracic (chest) vertebrae of his spinal column. Kaplan sought treatment from respondent neurosurgeon Adam Mamelak, M.D. In July 2002, respondent operated on Kaplan's spine, intending to excise the herniated portion of disk T8-9 to relieve Kaplan's pain. During surgery, respondent mistook the disks causing appellant's pain and their place on Kaplan's spinal column. He thus operated

on the disks between the sixth and seventh (T6-7) and seventh and eighth thoracic vertebrae (T7-8), instead of the targeted—and correct—T8-9.

After recovering from surgery, appellant continued to suffer pain. Respondent thus ordered an MRI of appellant's spine. The MRI showed the protrusion causing appellant's pain from the herniation at T8-9 remained, because respondent had operated on the wrong disks.

Respondent met with appellant on September 11, 2002, to discuss the MRI's findings. During the meeting, respondent told appellant he had mistakenly operated on the wrong disks.[1] They discussed appellant's treatment options, after which appellant agreed to undergo a second operation. In September 2002, respondent reoperated on appellant, but again mislocated the herniation and operated on the wrong disk. Following the second surgery, appellant sought treatment from a different neurosurgeon who operated on the correct disk. From the repeated operations, appellant suffers lingering pain and limited mobility in his back.

On September 17, 2003, one year and six days after the September 11 conversation, appellant served his notice of his intent to sue respondent for medical malpractice. (Code Civ. Proc., § 364.)[2] If filed within 90 days before expiration of the one-year statute of limitations for medical malpractice, the notice of intent ordinarily gives an injured patient an additional 90 days from service of the notice within which to file his malpractice complaint. (Id., subd. (d).) In keeping with his perceived extra time, appellant filed his complaint for medical malpractice less than 90 days later on December 15, 2003. (The complaint also alleged causes of action for battery, which the court dismissed on demurrer for failure to state a cause of action. We discuss that dismissal in more detail later in this opinion.)

Respondent answered the complaint with the affirmative defense that the one-year statute of limitations for medical malpractice barred appellant's complaint. Respondent observed (and the jury later found) that appellant knew from the September 11 conversation that respondent had injured him by operating on the wrong disks. Thus, appellant's notice of intent to sue served on September 17, 2003, was six days late and afforded him no 90-day extension to file his complaint, rendering his complaint filed in December 2003 three months too late.

---

[1] Appellant disputes the details of this conversation. He claims respondent did not admit to a mistake, and told him only that the surgery had not succeeded. The jury expressly found, however, that appellant knew by the time of the September 11 conversation that respondent may have committed malpractice. Appellant does not challenge on appeal the sufficiency of the evidence to support the jury's finding. We therefore accept it as proven.

[2] All undesignated statutory references are to the Code of Civil Procedure.

Respondent moved to bifurcate the trial on his statute of limitations defense from the trial on liability. Appellant did not oppose the motion, and the court thereafter granted it. The statute of limitations defense was tried to a jury, which returned a special verdict in respondent's favor. In reaching its unanimous verdict, the jury answered "yes" to the following question: "Was the plaintiff on notice of wrongdoing on the part of the defendant by September 11, 2002?" Following the jury's verdict, the court ruled appellant's complaint was untimely under the one year statute of limitations for medical malpractice. The court entered judgment for respondent. This appeal followed.

## DISCUSSION

### 1. *Court Erred by Prohibiting Discovery on Tolling of Statute of Limitations*

During pretrial discovery, appellant sought discovery on whether respondent had been outside California anytime between the first operation in July 2002 and the one-year anniversary in 2003 of their September 11 conversation. Appellant's theory was section 351 tolled the one-year statute of limitations during any days respondent was out of state. That statute states: "[I]f, after the cause of action accrues, [the defendant] departs from the State, the time of his absence is not part of the time limited for the commencement of the action." (§ 351.)

Objecting to the discovery, respondent argued section 351 did not apply to medical malpractice. He therefore refused to answer appellant's requests for admission or interrogatories because he deemed them not likely to lead to relevant or admissible evidence.

Appellant moved to compel respondent's compliance with the discovery requests.[3] The court denied appellant's motions. Agreeing with respondent, it found tolling under section 351 for a defendant's absence from California did not apply to the statute of limitations for medical malpractice. Thus, discovery involving respondent's time outside California sought meaningless information. In support of its ruling, the court relied on a footnote in *Hanooka v. Pivko* (1994) 22 Cal.App.4th 1553 [28 Cal.Rptr.2d 70] (*Hanooka*). That footnote stated, "The general tolling provision of section 351 is not applicable to medical malpractice actions."[4] (22 Cal.App.4th at p. 1560, fn. 5.)

---

[3] Appellant served his motion to compel on May 20, 2005. The trial was set to begin two months later on July 19, 2005. A party need not complete discovery until 30 days before the scheduled trial date and is entitled to a hearing on a motion to compel up to 15 days before that date. (§ 2024.020, subd. (a).)

[4] The day before the trial began, appellant filed with this court a petition for writ of mandate. He sought an order from us directing the trial court to allow discovery about

■ Our Supreme Court's decision in *Belton v. Bowers Ambulance Service* (1999) 20 Cal.4th 928 [86 Cal.Rptr.2d 107, 978 P.2d 591] (*Belton*) shows the trial court erred in refusing to apply section 351 to allow tolling of the statute of limitations for medical malpractice. In *Belton*, a medical care provider injured a prison inmate, who sued the provider for medical malpractice more than one year after being injured. The trial court dismissed the complaint as untimely because the prisoner had not filed it within the one-year statute of limitations. (*Belton*, at pp. 929–930.) On appeal, the Supreme Court reversed the trial court. The Supreme Court held section 352.1—the tolling provision for the benefit of incarcerated prisoners—applied to the one-year part of the medical malpractice statutes of limitations.

■ The *Belton* court's analysis rested on a careful reading of the statute of limitations language in MICRA (Medical Injury Compensation Reform Act), the legislative scheme covering medical malpractice. (§ 340.5.) It noted MICRA's statute of limitations had two parts. The first required an injured patient to file his medical malpractice complaint within one year of when he discovered, or should have discovered, his injury. The second imposed an absolute limit of three years to file a complaint after the injury's occurrence, except under circumstances of fraud, intentional concealment, or a foreign object's presence inside a patient. (*Belton, supra*, 20 Cal.4th at pp. 930–931.) (Case law sometimes refers to the one-year period as the "inside" limit and the three-year period as the "outside" limit.) Applying customary principles of statutory interpretation, the *Belton* court concluded the Legislature's intent in identifying three specific exceptions to the ordinarily absolute three-year outside limit was to prohibit tolling of the three-year statute of limitations for any other reason. (*Id.* at p. 932, favorably citing *Fogarty v. Superior Court* (1981) 117 Cal.App.3d 316, 320 [172 Cal.Rptr. 594] (*Fogarty*) ["No tolling provision outside of MICRA can extend the three-year maximum time period that section 340.5 establishes" beyond the three identified in the statute].) The *Belton* court drew from the inside limit's failure to identify, in contrast, any limits on tolling that general statutory tolling provisions continued to apply to the one-year statute of limitations. The " 'listing of specified tolling rules in section 340.5 implicitly excludes others, but these limits apply only to tolling rules which extend the total limitations period beyond three years.' " (*Belton*, at pp. 931–932.) Thus, section 352.1's general tolling of statutes of limitations for the benefit of confined prisoners applied to the one-year statute for medical malpractice. (*Belton*, at p. 932.)

---

respondent's absence from California. Although noting section 351 appeared to apply, we denied the writ as untimely while leaving to the trial court's discretion whether to reopen discovery. The day after our denial, the trial court denied appellant's request for more discovery, but ruled appellant could examine respondent at trial about any absence from California.

The implication of *Belton*'s analysis for our case here is inescapable. Like tolling the statute of limitations for confined prisoners under section 352.1, tolling under section 351 for a defendant's absence from California is of general applicability. (For other general tolling provisions, see § 352 [minors or insanity]; § 352.5 [restitution orders]; § 353.1 [court's assumption of attorney's practice]; § 354 [war]; § 356 [injunction].) Respondent tries to distinguish *Belton* by noting our case and *Belton* involve different tolling statutes. But *Belton*'s analysis shows the distinction is inconsequential. The *Belton* court's focus was interpreting MICRA's provisions; it was a mere happenstance to *Belton*'s analysis that the tolling provision at issue involved incarcerated prisoners instead of time out of state or any other general tolling provision, and nothing in *Belton* suggests its analysis does not apply to such other general provisions.

In light of our Supreme Court's decision in *Belton*, the trial court's reliance on a footnote in *Hanooka*—a court of appeal decision five years before *Belton*—was misplaced for several reasons. First, the footnote was dicta. It stated, "The general tolling provision of section 351 is not applicable to medical malpractice actions." (*Hanooka, supra*, 22 Cal.4th at p. 1560, fn. 5.) The question before the *Hanooka* court did not, however, involve section 351. Instead, the question was "whether a plaintiff's service of defendant doctors at the hospital where they maintained staff privileges complies with the notice [of intent to sue] provision of Code of Civil Procedure section 364 in order to extend the statute of limitations, and if not, whether relief can be granted pursuant to Code of Civil Procedure section 473." (*Hanooka*, at p. 1556, fn. omitted.) Second, the footnote's underlying authority did not support the dicta's broad sweep. The footnote cited *Fogarty, supra*, 117 Cal.App.3d at page 320. But *Fogarty* involved a patient's mental incompetence and MICRA's three exceptions for allowing tolling of the *three year* outside limit for medical malpractice. (*Fogarty*, at p. 320.) Citing *Fogarty* for the proposition that section 351 does not apply to the one-year medical malpractice statute of limitations is therefore unwarranted.

In support of the trial court's ruling, respondent cites *Bennett v. Shahhal* (1999) 75 Cal.App.4th 384 [89 Cal.Rptr.2d 272] (*Bennett*), which was decided three months after *Belton*. *Bennett* stated tolling for insanity (§ 352) does not apply to the one-year inside limit for medical malpractice. (*Bennett*, at p. 392.) Respondent cites *Bennett* for the proposition that nothing other than fraud, intentional concealment, or presence of a foreign object can toll the one year inside limit. No published Court of Appeal or Supreme Court decision has cited *Bennett* for the proposition respondent asserts. Furthermore, *Bennett* does not square with the Supreme Court's decision in *Belton*.

*Alcott Rehabilitation Hospital v. Superior Court* (2001) 93 Cal.App.4th 94, 104–105 [112 Cal.Rptr.2d 807] (*Alcott*) succinctly identifies the errors in

*Bennett*'s refusal to toll the inside limit. *Alcott* first notes that *Bennett*'s statement rejecting tolling is dicta because the question before the *Bennett* court was whether a second notice of intent to sue (§ 364) extended the statute of limitations for medical malpractice. (*Bennett, supra,* 75 Cal.App.4th at pp. 387, 390, 392; see also *Alcott,* at p. 104.) Second, *Bennett* does not cite, let alone discuss, *Belton,* decided three months earlier. Instead, *Bennett* cites *Fogarty*'s language that tolling does not apply to the statute of limitations for medical malpractice. (*Bennett,* at p. 392.) *Bennett*'s citation overlooks, however, that *Fogarty* involved the three-year outside limit, not the one-year inside limit, a distinction central to the Supreme Court's analysis in *Belton* that general tolling statutes apply to the inside limit. *Alcott* pretty much says it all, and we need say no more as to why we decline to adopt *Bennett*'s description of the law.[5]

Respondent contends appellant waived any error involving tolling of the statute of limitations by not obtaining a ruling from the trial court. To the contrary, appellant obtained a ruling about tolling when the court denied his motion to compel on the ground tolling did not apply to medical malpractice. If respondent means to contend that appellant should have gotten some type of ruling during trial, he does not identify the matter on which the ruling should have touched, nor does he explain the necessity of a ruling during trial when the claimed error occurred months earlier in the court's refusal to permit discovery on respondent's absence from California.

The trial court's error was not harmless. The jury found appellant was on notice on September 11, 2002, of respondent's wrongdoing. Applying that finding, appellant had one year until September 11, 2003, to file his malpractice complaint. Both appellant and respondent agree that appellant's service of a timely notice of intent to sue would have added 90 days to the time appellant could file his complaint. (*Woods, supra,* 53 Cal.3d at p. 319.) Appellant filed his complaint within 90 days of his serving his notice of intent to sue.

The dispute on which this appeal turns is whether the notice of intent was timely. To be timely, appellant needed to serve his notice sometime during the final 90 days of the one-year statute of limitations period. Here, appellant served his notice on September 17, 2003—six days late if the one-year statute

---

[5] Respondent also urges us to find *Woods v. Young* (1991) 53 Cal.3d 315 [279 Cal.Rptr. 613, 807 P.2d 455] (*Woods*) prohibits tolling of the inside limit. *Woods* held that an injured patient's notice of intent to sue allows the patient 90 more days to file his complaint only when the patient serves the notice less than 90 days before the statute of limitations expires. (*Id.* at pp. 319–320.) Respondent cites *Woods* to support a distinction between tolling of the accrual of a cause of action for medical malpractice and tolling of the statute of limitations for medical malpractice once the statute has begun to run. In light of *Belton,* we see no relevance to respondent's attempted distinction.

of limitations running from September 11, 2002, was not tolled. Without the benefit of discovery, appellant drew from respondent trial testimony that he was outside California no more than three days during the statute of limitations period—pushing back the last day for appellant to timely serve his notice of intent to September 14, 2003. Respondent's possible absence from the state for three more days—merely a long weekend perhaps—would have made a world of difference to the timeliness of appellant's notice of intent to sue and, thus, to his complaint. Thus, the trial court's misreading of the law to deny appellant discovery on respondent's time outside California prevented appellant from gathering evidence and preparing for trial on a dispositive issue.

Respondent asserts any error by the court was harmless because he testified he was out of state for only three days and he no longer has calendars to show otherwise.[6] Thus, he concludes, the only available evidence settled any dispute about how many days he was outside California. But appellant need not accept respondent's testimony as the final word. Moreover, appellant's discovery requests encompassed additional documents besides respondent's calendars. Discovery's purpose includes unearthing evidence that one's opponent might not volunteer; respondent's assertion that his testimony settled the matter overlooks that purpose. Discovery might also have developed witnesses familiar with respondent's vacation schedule.

## 2. *Cause of Action for Battery*

■ Appellant asserted battery causes of action for the surgeries on the wrong disks. Battery is an offensive and intentional touching without the victim's consent. (*Ashcraft v. King* (1991) 228 Cal.App.3d 604, 611 [278 Cal.Rptr. 900] (*Ashcraft*).) Because appellant generally consented to the operations, respondent asserts his surgeries on the incorrect disks may constitute negligence, but not battery. Respondent therefore demurred to appellant's battery claims for failing to state a cause of action. The trial court agreed and sustained the demurrer without leave to amend because respondent did not intend to operate beyond the scope of appellant's consent.

■ We conclude the court erred. The consent form appellant signed gave respondent permission to operate only on disk T8-9, a surgery the form described as a "thoracic eight-nine transverse pedicular diskectomy." A patient need not grant open-ended consent when submitting to medical care, and may instead impose limitations by which the physician ordinarily must abide. For example, in *Ashcraft, supra*, 228 Cal.App.3d 604, the patient agreed to

---

[6] Strictly speaking, respondent testified only that his Outlook calendar for 2002 no longer existed because of software changes. He did not explicitly say his 2003 calendar no longer existed, although his testimony could be read that way.

receive blood transfusions during surgery but insisted the blood come only from family members. (*Id.* at pp. 611–612.) The surgeon ignored the patient, however, and transfused blood from nonfamily donors, thereby unwittingly infecting the patient with HIV. Because the patient had limited his consent—transfusions only from family members—the surgeon's conduct exceeding that consent was a battery. (*Ashcraft*, at p. 610.) Similarly here, respondent may have committed battery by operating on appellant's T6-7 and T7-8 disks when he did not have permission to operate on any disk other than T8-9.

Cases establish that the law will deem a patient to have consented to a touching that, although not literally covered by the patient's express consent, involves complications inherent to the procedure. For example, in *Cobbs v. Grant* (1972) 8 Cal.3d 229 [104 Cal.Rptr. 505, 502 P.2d 1] (*Cobbs*), a surgeon operated on the patient's stomach ulcer. During the operation, the surgeon accidentally injured the patient's spleen, a known small risk of the procedure. (*Id.* at p. 237.) Reasoning he had consented to ulcer surgery but did not know the surgeon would touch (let alone injure) his spleen, the patient sued for medical battery.

Our Supreme Court in *Cobbs* rejected the battery cause of action, calling the patient's spleen injury "a classic illustration of an action that sounds in negligence." (*Cobbs, supra*, 8 Cal.3d at p. 241.) The court explained the law should not elevate every medical mishap or mistake from negligence into battery. It stated: "[W]hen the patient consents to certain treatment and the doctor performs that treatment but an undisclosed inherent complication with a low probability occurs, no intentional deviation from the consent given appears . . . . In that situation the action should be pleaded in negligence." (*Id.* at pp. 240–241.) The *Cobbs* court added, however, that a battery occurs if the physician performs a "substantially different treatment" from that covered by the patient's expressed consent. (*Cobbs, supra*, 8 Cal.3d at p. 239; see also CACI No. 530A.)

*Cobbs* offers several examples of medical battery based on a physician's performance of a substantially different procedure. (*Cobbs, supra*, 8 Cal.3d at p. 239.) The examples do not seem to lend themselves to any overarching test for deciding at the margin whether a medical procedure is "substantially different" from the authorized procedure, and *Cobbs*'s description of them offers little guidance. For example, in *Berkey v. Anderson* (1969) 1 Cal.App.3d 790 [82 Cal.Rptr. 67], the patient agreed to uncomplicated electromyograms, but the doctor performed a myelogram that involved a spinal puncture. In *Bang v. Charles T. Miller Hospital* (1958) 251 Minn. 427 [88 N.W.2d 186], the patient consented to a prostate resection but the doctor also tied off his sperm ducts. In *Corn v. French* (1955) 71 Nev. 280 [289 P.2d 173], the patient agreed to exploratory surgery, but the doctor also performed a

mastectomy. And in *Zoterell v. Repp* (1915) 187 Mich. 319 [153 N.W. 692], the patient consented to a hernia operation, but the doctor also removed her ovaries. (See also *Conte v. Girard Orthopaedic Surgeons Medical Group, Inc.* (2003) 107 Cal.App.4th 1260, 1267 [132 Cal.Rptr.2d 855] [reciting the examples from *Cobbs* as examples of medical battery]; Annot., Liability of Physician or Surgeon for Extending Operation or Treatment Beyond That Expressly Authorized (1957) 56 A.L.R.2d 695 [discussing variety of cases alleging medical battery].)

Indeed, in two non-California cases involving back surgery resembling appellant's operations, courts reached opposite conclusions whether a battery occurred. In *Perin v. Hayne* (Iowa 1973) 210 N.W.2d 609, the court cited *Cobbs* in dicta stating that two fusions of cervical vertebrae to deal with herniated disks were battery when the patient consented to only one fusion. (*Perin v. Hayne*, at p. 618.) But in *Woolley v. Henderson* (Me. 1980) 418 A.2d 1123, the court compared its facts to *Cobbs* in finding that a surgeon did not commit battery when he mistook his place on the patient's spine and operated on disks not covered by the patient's consent because surgery on the "wrong-level" of disk was not a substantially different procedure. (*Woolley v. Henderson*, at pp. 1126, 1132–1133.)

██ In the absence of any definitive case law establishing whether operating on the wrong disk within inches of the correct disk is a "substantially different procedure," we conclude the matter is a factual question for a finder of fact to decide and, at least in this instance, not one capable of being decided on demurrer. After receiving evidence, including expert testimony, on among other things spinal structure and physiology, the nature of disk surgery, the manner in which appellant's surgeries unfolded in the operating room, and whether surgery on an incorrect disk is a reasonable risk of this surgery, the fact finder will be better prepared to decide such questions than are we or the trial court, which have before us only allegations in a complaint. Accordingly, the trial court erred in sustaining respondent's demurrer to appellant's cause of action for battery.

## DISPOSITION

The judgment for respondent is reversed, and the matter is remanded for further proceedings on appellant's causes of action for battery and medical malpractice. The trial court is directed (1) to vacate its orders sustaining the demurrers to the battery causes of action and denying the motion to compel discovery, and (2) to overrule the demurrers and grant the motion to compel.

In reversing, we do not disturb the jury's special verdict finding appellant was on notice of wrongdoing by respondent on September 11, 2002. Although we leave the special verdict in place, it does not support judgment for

respondent because it does not finally adjudicate appellant's timeliness in filing his cause of action for medical malpractice. We therefore remand the matter to permit appellant to prosecute his battery cause of action and to pursue discovery on the tolling of the statute of limitations for medical malpractice based on respondent's absence from California. Upon the completion of that discovery, the case may proceed on both causes of action as the trial court sees fit, including a further bifurcated trial on tolling of the statute of limitations if appropriate. Appellant to recover his costs on appeal.

Cooper, P. J., and Flier, J., concurred.

Respondent's petition for review by the Supreme Court was denied July 9, 2008, S164172.