EARLEY vs. SLAVIN, 101 Mass. App. Ct. 198

 
 SETH EARLEY vs. SUMNER A. SLAVIN.

101 Mass. App. Ct. 198
 February 7, 2022 - June 10, 2022

Court Below: Superior Court, Middlesex County
Present: Vuono, Shin, & Singh, JJ.

 

No. 21-P-600.

Contract, With doctor, Performance and breach. Assault and Battery. Medical Malpractice, Contract with doctor, Consent to medical treatment, Expert opinion. Practice, Civil, Summary judgment.

In a civil action arising from the defendant physician's promise to excise skin from the plaintiff's chest as part of an elective surgical procedure, a Superior Court judge erred in granting summary judgment in favor of the defendant on the count alleging breach of contract, based on the plaintiff's failure to put forward an expert, where the claim sounded in contract, not medical malpractice, and therefore, no expert testimony was required for the plaintiff to prove his claim. [201-204]

In a civil action, a Superior Court judge appropriately granted summary judgment in favor of the defendant on the count alleging battery, where the concept of "conditional consent" on which the claim was based was inapplicable in the circumstances of the case. [204-205] 

Civil action commenced in the Superior Court Department on December 18, 2017. 

 The case was heard by Valerie A. Yarashus, J., on a motion for summary judgment, and a motion for reconsideration was also heard by her. 

Evans Huber for the plaintiff.

John P. Puleo for the defendant.

 SHIN, J. The principal issue in this appeal is whether expert testimony is required to prove a claim that the defendant, a plastic surgeon, committed a breach of a promise to excise excess skin from the plaintiff's chest as part of an elective cosmetic procedure involving the use of liposuction. Determining that the claim, although labeled as breach of contract, was in substance one for malpractice, a Superior Court judge granted summary judgment for the defendant based on the plaintiff's failure to put forward an expert. We conclude to the contrary that the claim is founded in contract and that the plaintiff need not present an expert to meet 

 Page 199 

his burden of proof at trial. Accordingly, we vacate that portion of the judgment dismissing the breach of contract claim and remand the case for further proceedings. We affirm the remainder of the judgment.

 Background. We recite the facts in the light most favorable to the plaintiff, the party opposing summary judgment. See Bulwer v. Mount Auburn Hosp., 473 Mass. 672, 680 (2016).

 In October 2014 the plaintiff had an initial consultation with the defendant about options for correcting his gynecomastia, a condition that causes excess breast tissue. The defendant recommended a surgery that would involve excising the tissue and using liposuction to remove excess fat. From a previous experience, the plaintiff knew that liposuction can result in sagging skin, and so he made clear to the defendant that he did not want to proceed with the surgery unless it included "a skin excision component." The defendant promised in return that he would remove the excess skin as part of the surgery. The defendant discussed the skin excision procedure with the plaintiff "in some detail," explaining that it would result in "no obvious scar, as the suture would be on a naturally-occurring edge" of the areolas.

 Satisfied with the defendant's plan, the plaintiff agreed to undergo the surgery. Also, at the defendant's urging, the plaintiff agreed to undergo another surgery on his flanks, which, like the gynecomastia correction, was to involve tissue excision and liposuction, followed by the removal of excess skin. The plaintiff proceeded to sign two consent forms. The first authorized the defendant "to perform upon [the plaintiff] . . . the operation known as gynecomastia correction." The second, titled "Medical/Surgical Treatment Consent," described the procedures to be performed as "bilateral excision gynecomastia," "excision of bilateral flank excess tissue," and "liposuction chest [and] bilateral flanks."

 On the day of the surgery, the plaintiff was in the holding area and about to receive anesthesia when the defendant approached him. For the first time, the defendant suggested that he might not have to remove the excess skin from the plaintiff's flanks because the skin could "'settle down' on its own." The defendant asked that he be allowed to "use his judgment" as to whether skin excision would be necessary on the plaintiff's flanks, and the plaintiff agreed. The defendant then handwrote the word "possible" before "excision of bilateral flank excess tissue" on the Medical/Surgical Treatment Consent form. At no point did the 

 Page 200 

defendant suggest that skin excision would not be included as part of the gynecomastia correction, nor did he seek permission to use his judgment in that respect.

 Upon awaking from anesthesia, the plaintiff discovered that the defendant had not removed the excess skin from either the plaintiff's chest or flanks because the defendant had determined that the skin would retract and flatten on its own. Months later, however, the skin still had not tightened, and it became clear that the condition was not temporary. When the plaintiff expressed unhappiness with the outcome, the defendant offered to perform the skin excision as a "touch up" and to waive his surgical fee "as a gesture of goodwill." The plaintiff declined for several reasons, including that he would be responsible for the additional hospital fees.

 The plaintiff filed this action in December 2017 and, with leave of court, filed an amended complaint in October 2019. The amended complaint raised four claims: breach of contract for failure to achieve a promised result (count I); unjust enrichment (count II); breach of contract for failure to perform skin excision as part of the gynecomastia correction (count III); and battery (count IV). [Note 1] The defendant filed a motion for summary judgment on all the claims, which the judge initially denied. The defendant moved for reconsideration, and, while that motion was pending, we issued our decision in Vacca v. Brigham & Women's Hosp., Inc., 98 Mass. App. Ct. 463, 471 (2020), in which we explained that "a judge faced with a claim against a health care provider must look at the substance of the plaintiff's allegations, rather than the label on the cause of action, to determine if the claim is a malpractice claim." Reconsidering her earlier ruling in light of Vacca, the judge determined that the plaintiff's claims were essentially malpractice claims and could not survive summary judgment without expert evidence. Because the plaintiff "readily admit[ted]" that he did not intend to retain an expert, the judge then concluded that there was no genuine issue for trial. The plaintiff's appeal from the dismissal of counts III and IV is now 

 Page 201 

before us. [Note 2]

 Discussion. We review the judge's decision de novo. See Bulwer, 473 Mass. at 680. Our task is to determine whether, viewing the facts in the light most favorable to the nonmoving party, the moving party is entitled to judgment as a matter of law. See id. Where, as here, the moving party will not have the burden of proof at trial, he can prevail on summary judgment by demonstrating that the nonmoving party "has no reasonable expectation of proving an essential element" of his claim. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991).

 1. Breach of contract. The plaintiff argues, and the defendant does not contest, that count III sets out all the essential elements of a breach of contract claim. In particular, it alleges that the parties "entered into a contractual agreement pursuant to which [the defendant] agreed to perform a chest skin excision as part of [the plaintiff's] gynecomastia procedure, and [the plaintiff] agreed to pay for [the defendant's] services," that the plaintiff "fully performed under the contract," that the defendant "breached the contract by failing to perform the chest skin excision as part of the gynecomastia procedure," and that the plaintiff "was harmed by this breach." [Note 3]

 The parties' disagreement is over the substance of the claim. The defendant contends that the claim sounds in malpractice because it arises from his "exercise of medical judgment" as to how best to perform the gynecomastia correction. If that characterization is correct, the plaintiff would be obliged to prove, among other things, that the defendant deviated from the applicable standard of care, which ordinarily would require expert testimony. See Palandjian v. Foster, 446 Mass. 100, 105-106 (2006). On the other hand, the plaintiff contends that the claim sounds in contract and that the ultimate issue for the jury -- whether the defendant promised to remove the excess skin as part of the 

 Page 202 

gynecomastia correction -- is one on which expert testimony is neither necessary nor appropriate.

 After carefully reviewing the substance of the plaintiff's allegations, see Vacca, 98 Mass. App. Ct. at 471, we conclude that his claim asserts breach of contract, not malpractice or negligence, and that it should not have been dismissed on summary judgment. The crux of the claim is that the defendant made a specific promise to perform the chest skin excision and did not keep that promise, causing harm to the plaintiff. No expert testimony is needed to prove these allegations, which do not depend on any finding that the defendant was negligent or deviated from a standard of care. See Rosato v. Mascardo, 82 Conn. App. 396, 411 (2004) (claim that plaintiff "bargained for a breast lift and instead received a breast lift and silicone implants" sounded in contract as it "specified alleged acts of the defendant that would constitute a deviation from the alleged agreement"); Heffner v. Reynolds, 149 Ohio App. 3d 339, 343 (2002) (claim based on promise that plaintiffs "would be satisfied with the results of the liposuction surgeries" was not one for malpractice because it was "not dependent on a finding that [doctor] committed some form of professional misconduct"; "if a doctor chooses to guarantee that a patient will be satisfied with the results of elective cosmetic surgery, the patient has the right to sue the doctor for breach of contract if he or she is not satisfied").

 Citing Vacca, the defendant suggests that any claim arising out of a surgical procedure must, as a matter of law, be deemed a malpractice claim because "[i]t is the very essence of a surgeon's responsibility to utilize [his or her] best skill and judgment in the performance of surgery." But Vacca cannot be read so broadly. Vacca expands on the holdings of earlier cases that a plaintiff cannot circumvent the statutory scheme governing "action[s] for malpractice, error or mistake against a provider of health care" by taking what is in substance a malpractice claim and naming it something different. Vacca, 98 Mass. App. Ct. at 471, quoting G. L. c. 231, § 60B. Vacca does not hold that no breach of contract claim stemming from a medical procedure is viable as a matter of law. Rather, we deemed the claims there to sound in malpractice because in substance they "all challenge[d] [the provider's] medical judgment." Id. at 472.

 In contrast here, the plaintiff claims that the defendant's failure to perform the chest skin excision was a breach of a specific promise, not that it was an error of medical judgment. This is not 

 Page 203 

a disguised malpractice claim, as the defendant argues. Although the defendant may have exercised medical judgment in determining that the skin would tighten on its own, the plaintiff does not allege that that determination was a departure from the standard of care, nor does success on his claim depend on proof that it was. The claim is in substance that the plaintiff did not receive the cosmetic procedure for which he bargained and paid. This sounds in contract, and whether the parties made such a bargain is within the capacity of a lay jury to decide. [Note 4] See Salem Orthopedic Surgeons, Inc. v. Quinn, 377 Mass. 514, 521 (1979) ("question whether the parties made the agreement as alleged in the counterclaim is beyond the competence of a [medical malpractice] tribunal"); Koltin v. Beth Israel Deaconess Med. Ctr., 62 Mass. App. Ct. 920, 920 (2004) (tribunal should not have decided breach of contract claim where "[t]here was no suggestion that [claim] was based on neglectful care or medical misjudgment"). Cf. Leininger v. Franklin Med. Ctr., 404 Mass. 245, 248 (1989) (beyond competence of tribunal to evaluate whether defendants failed to comply with civil commitment statute, where plaintiff did "not claim the defendants were negligent or mistaken in terms of their medical judgment or treatment").

 Mindful that "a frivolous action alleging breach of contract may have considerable nuisance value," Salem Orthopedic Surgeons, Inc., 377 Mass. at 520, we caution that our decision should not be read expansively. The law is settled that all claims implicating the medical judgment of a health care provider, regardless of their label, must be screened by a malpractice tribunal, see Little v. Rosenthal, 376 Mass. 573, 577 (1978); Lane v. Winchester Hosp., 101 Mass. App. Ct. 74, 76 (2022), and nothing we have said should be taken to relax that requirement. We note also that claims alleging breach of contract to produce a specific medical result must be referred to the tribunal to evaluate "whether the medical result obtained is consistent with the medical result allegedly promised by the health care provider." Salem Orthopedic Surgeons, Inc., supra at 521. [Note 5] The plaintiff here has not pursued his claim that the defendant committed a breach of a 

 Page 204 

promise to achieve a specific result, and so we do not decide what type of evidence would be required to prove such a claim. Finally, we note that no question of impossibility or impracticability of performance is before us. The reasonable inference that can be drawn from the summary judgment record is that the defendant chose not to proceed with the chest skin excision because he thought it unnecessary, not because he thought it would jeopardize the plaintiff's health or safety. We express no view on whether an impossibility or impracticability defense, if raised by a physician or other health care provider, would subject what is nominally a breach of contract claim to the screening provisions of G. L. c. 231, § 60B. Cf. Salem Orthopedic Surgeons, Inc., supra at 519-521.

 2. Battery. For substantially the same reasons, we agree with the plaintiff that no expert testimony is needed to prove his claim for battery. Nonetheless, we conclude that summary judgment is appropriate on this claim because, on the facts presented, we decline to apply the concept of "conditional consent" on which the claim is based. As the plaintiff's theory goes, although he consented to the gynecomastia correction, his consent was conditioned on the defendant's performing skin excision as part of the surgery. Thus, he says, once the defendant failed to abide by that condition, the surgery became unconsented-to, and hence, a battery.

 The plaintiff asks us to recognize the "conditional consent" theory of battery as valid in Massachusetts, citing a number of cases from other jurisdictions in support. These cases fall into two categories. The majority of the cases involve claims that the defendant went beyond the scope of the patient's consent and, in doing so, committed an unwanted touching. [Note 6] The remaining cases 

 Page 205 

involve situations where the patient allegedly conditioned consent to a surgery on the happening of a condition precedent, which then did not materialize. [Note 7]

 The plaintiff's claim fits within neither category. Unlike in the cases he cites, the plaintiff does not allege that the gynecomastia correction exceeded the scope of his consent. See Waters v. Blackshear, 412 Mass. 589, 591 (1992) (person commits battery by intentionally committing "unpermitted contact"); Zaleskas v. Brigham & Women's Hosp., 97 Mass. App. Ct. 55, 62 (2020), quoting Matter of Spring, 380 Mass. 629, 638 (1980) ("[M]edical treatment . . . without [the patient's] consent is said to be a battery"). Instead, the plaintiff claims in essence that the gynecomastia correction, although wanted when it occurred, became unwanted when the defendant did not touch him further by performing the skin excision. The plaintiff cites no case that has recognized a viable cause of action for battery in similar circumstances. Thus, while conditional consent might well be a valid theory of liability in another case, we decline to apply it on these facts. See Conte v. Girard Orthopaedic Surgeons Med. Group, Inc., 107 Cal. App. 4th 1260, 1268 (2003) (doctor did not commit battery by doing "less, not more, than he was authorized to do during surgery," despite plaintiff's claim that this resulted in substantially different procedure than that to which he consented). [Note 8]

 Conclusion. So much of the judgment as entered for the defendant on count III is vacated, and the matter is remanded for further proceedings. The remainder of the judgment is affirmed.

So ordered.

FOOTNOTES
[Note 1] The original complaint included claims of negligence, which were submitted to a medical malpractice tribunal. The tribunal found no legitimate question of liability, noting that the plaintiff failed to offer any expert evidence. Although the tribunal also noted that the plaintiff had withdrawn his negligence claims, the plaintiff still posted a bond in the Superior Court within thirty days of the tribunal's order. See G. L. c. 231, § 60B. The plaintiff was allowed to amend his complaint several months later, and the defendant did not thereafter move to reconvene the tribunal. 

[Note 2] The plaintiff states in his brief that he is not challenging the dismissal of count I, and he conceded at oral argument that count II is duplicative of count III. Thus, dismissal of count II is appropriate notwithstanding our remand of count III. See Santagate v. Tower, 64 Mass. App. Ct. 324, 329 (2005); Fox v. F & J Gattozzi Corp., 41 Mass. App. Ct. 581, 589 (1996). The remaining claims, counts III and IV, relate solely to the gynecomastia correction and raise no allegation concerning the surgery on the plaintiff's flanks. 

[Note 3] Elsewhere in the amended complaint, the plaintiff describes the harms he suffered as "being subjected to a surgery to which he would otherwise not have consented" and "being left with bands of excess, sagging skin under both breasts." 

[Note 4] To the extent the defendant argues that the summary judgment record removes any genuine dispute on the question, we disagree. The plaintiff's affidavit, his deposition testimony, and the consent forms, along with other evidence, sufficed to create a material issue of fact for trial. 

[Note 5] This rule is based partly on the rationale that, because "it is unlikely that physicians of even average integrity will in fact" promise specific results, "the great bulk of cases so alleging will actually turn on the ordinary question of negligent treatment." Salem Orthopedic Surgeons, Inc., 377 Mass. at 520, quoting Sullivan v. O'Connor, 363 Mass. 579, 582 (1973). 

[Note 6] See Duncan v. Scottsdale Med. Imaging, Ltd., 205 Ariz. 306, 310-311 (2003) (patient consented only to demerol or morphine for sedation but injected with fentanyl); Ashcraft v. King, 228 Cal. App. 3d 604, 612-614 (1991) (consent to surgery conditioned on use of family-donated blood, but doctor used blood from general supply); Keister v. O'Neil, 59 Cal. App. 2d 428, 433-434 (1943) (violation of condition that no spinal anesthetic be used during surgery); Chambers v. Nottebaum, 96 So. 2d 716, 717-718 (Fla. Dist. Ct. App. 1957) (same); Murphy v. Implicito, 392 N.J. Super. 245, 260 (App. Div. 2007) (violation of condition that no cadaver bone be used during surgery); Rolater v. Strain, 39 Okla. 572, 574-576 (1913) (violation of condition that no bone be removed from patient's foot during surgery); Moscicki v. Shor, 107 Pa. Super. 192, 195-196 (1932) (violation of condition that teeth not all be extracted at same time). 

[Note 7] See Grieves v. Superior Court of Orange County, 157 Cal. App. 3d 159, 164-165 (1984) (consent to tubal ligation only if baby born without deformities); Clark v. Miller, 378 N.W.2d 838, 847 (Minn. Ct. App. 1986) (consent to knee surgery only if doctor discovered arthritis or misalignment). 

[Note 8] We question whether the battery claim as framed would not, in any event, be duplicative of the breach of contract claim. But the plaintiff does not concede the point, and, in light of our ruling, we need not resolve it. 

 
 Home/Search 
 Table of Cases by Citation
 Table of Cases by Name 
 

 Commonwealth of Massachusetts. Trial Court Law Libraries. Questions about legal information? Contact Reference Librarians.